**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER L. JOHNSON, | ) | CASE NO. 1:18-cv-01356 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Jennifer L. Johnson (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

## I. Procedural History

On June 1, 2015, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of September 10, 2013.[1] (Transcript ("Tr.") 247-254). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 171-202). Plaintiff participated in the hearing on March 6, 2017, was represented by counsel, and testified. (Tr. 36-73). A vocational expert ("VE") also participated and testified. *Id*. On May 15, 2017, the ALJ found Plaintiff not disabled. (Tr. 29). On April 17, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On June 14, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11, 13 & 14).

Plaintiff asserts the following assignment of error: (1) the RFC determination was not supported by substantial evidence. (R. 11).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1. Treatment Records

##### a. Physical Impairments

On May 8, 2014, Peter Bambakidis, M.D., saw Plaintiff for a follow up for multiple sclerosis, and noted Plaintiff was clinically stable. (Tr. 366). Plaintiff reported a few falls in the

---

[1]  A previous application for disability benefits was denied on September 9, 2013 after a hearing before an ALJ. (Tr. 94). The Appeals Council denied a request to review that decision on March 3, 2015. (Tr. 99).
[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

last two months. *Id*. Her gait was ataxic, but there was only borderline rombergism.[3] *Id*. She had rapid, alternating movements of the fingers performed in an irregular manner suggesting a volitional element. *Id*.

On August 11, 2014, Dr. Bambakidis noted that Plaintiff had been approved for Tecfidera. (Tr. 364). Plaintiff was doing "relatively well" and had a fairly ataxic gait. *Id*.

On August 18, 2014, Plaintiff was seen by Andrew Z. Filiatraut, D.O., for a "recheck of joint pain." (Tr. 400). Plaintiff complained of joint pain, joint stiffness, decreased range of motion (ROM) and morning stiffness. *Id*. Plaintiff characterized her pain as throbbing, severe, and occurring daily. *Id*. On examination, Plaintiff had full ROM in the spine, as well as   the upper and lower extremities without pain or weakness. (Tr. 401).

On September 17, 2014, Mohammed A. Ali, M.D., treated Plaintiff for complaints of joint pain and tenderness in her lower back, hands, fingers, and hips. (Tr. 393). Plaintiff reported moderate but worsening pain. *Id*. Dr. Ali noted that Plaintiff had skin psoriasis since the 1990s, and observed Plaintiff had gained fifty pounds in the last two years since she stopped working. *Id*. He assessed psoriatic arthritis. (Tr. 394).

On November 19, 2014, Plaintiff reported feeling well to Dr. Ali with minor complaints. (Tr. 388). She measured 5'7" tall and weighed 316 pounds with a BMI of 49.57. *Id*. On examination, her upper and lower extremities were noted as abnormal, but she had normal cervical spine movements. *Id*

---

[3] "Romberg's [sign] swaying of the body or falling when standing with the feet close together and the eyes closed; the result of loss of joint position sense, seen in tabes dorsalis and other diseases affecting the posterior columns, Called also *rombergism* and *Brauch-Romberg symptom*…" *Dorland's Illustrated Medical Dictionary*, 30th ed., 2003, at 1702 (italics in original).

On November 23, 2014, Plaintiff reported to Dr. Bambakidis that she was "doing relatively well as of late and is tolerating the Tecfidera without much in the way of difficulty." (Tr. 363).

On January 20, 2015, Plaintiff reported that she felt well with minor complaints. (Tr. 386). Dr. Ali noted that Plaintiff's rash is 90 percent better, and her joint symptoms were improving. *Id*. On examination, Plaintiff's upper and lower extremities "show normal ROM without pain or weakness." *Id*.

On April 20, 2015, Plaintiff told Dr. Ali that she does not feel well due to pain in her back, hands, and wrists. (Tr. 381). On examination, Plaintiff's upper and lower extremities "show normal ROM without pain or weakness." *Id*.

On May 13, 2015, Dr. Bambakidis noted Plaintiff was doing very well on her Tecfidera medication with no adverse side effects. (Tr. 361). Plaintiff had not had the blood work drawn that he ordered. *Id*. Her gait had a spastic-ataxic quality. *Id*. He stated overall she was relatively stable and did not alter her medication (Tr. 362).

On October 5, 2015, Dr. Ali saw Plaintiff for complaints of lower back pain of acute onset occurring for four weeks. (Tr. 525). On examination, Plaintiff's upper and lower extremities "show normal ROM without pain or weakness." *Id*. Dr. Ali assessed psoriatic arthritis that was "stable and doing well" with no synovitis and improved rash, as well as chronic sprain or strain of lumbar region for which he recommended exercise weight reduction. *Id*.

On November 30, 2015, Plaintiff saw Dr. Bambakidis, who again noted Plaintiff tolerated her medication without difficulty. (Tr. 613). Her gait was "mild to moderately wide-based and … similarly ataxic." *Id*. She performed rapid alternating movements of the fingers well. *Id*.

On January 4, 2016, Plaintiff indicated that she felt well with no complaints. (Tr. 637). On examination, Plaintiff's upper and lower extremities "show normal ROM without pain or

weakness." *Id*.

On May 31, 2016 visit, Dr. Bambakidis noted that Plaintiff's symptoms were largely unchanged save for some numbness she reported in her right hand. (Tr. 618). He gait was mildly wide-based and mildly ataxic. *Id*. In summary, he noted Plaintiff was doing well and did not alter her management. *Id*.

On June 21, 2016, Dr. Ali noted Plaintiff felt well with minor complaints, specifically pain in her lower back and hips. (Tr. 631). Her upper extremities "show[ed] normal ROM without pain or weakness and Lower extremities show full ROM without pain or weakness…." *Id*.

On October 12, 2016, Plaintiff was seen by Bassam Alhaddad, M.D., as a new patient. (Tr. 655). In his summary of Plaintiff's "History of Present Illness," Dr. Alhaddad notes Plaintiff had a history of multiple sclerosis, was diagnosed with psoriatic arthritis and was "[d]iagnosed with fibromyalgia." (Tr. 655). On rheumatological examination, Plaintiff had normal flexion and extension of the cervical spines, unremarkable straight leg raise test, normal bending of the lumbar spine, normal ROM in the shoulders, normal extension of the elbows, normal ROM of the wrists with mild tenderness on flexion/extension, tenderness of the metacarpals despite no swelling or synovitis, normal ROM of the hips and normal ROM of the knees, no pain or swelling in the ankles, and no tenderness in the feet. (Tr. 656).

On November 18, 2016, Plaintiff was seen in an expedited follow-up visit complaining of worsening symptoms of multiple sclerosis. (Tr. 623). Dr. Bambakidis noted that Plaintiff had mild to moderately wide-based stance, mildly ataxic gait, and borderline rombergism. *Id*. In summary, he believed Plaintiff was doing well overall, but thought it prudent to assume that Plaintiff was experiencing a mild exacerbation, which he treated with a short course of steroids. *Id*.

### b. Mental Impairments

On November 3, 2014, Plaintiff was prescribed Xanax for anxiety by Dr. Filiatraut, who recommended Plaintiff see a psychiatrist due to the fact that he did not believe any progress was being made. (Tr. 391).

On February 6, 2015, Plaintiff was seen by a social worker, Joan Meister, LISW, for complaints of helplessness, frustration, and anxiety. (Tr. 334). She was diagnosed with agoraphobia without a history of panic disorder. *Id*.

On February 24, 2015, Plaintiff was seen by Amanda Davis, MSN. (Tr. 509-517). Plaintiff reported "feeling a little bit depressed the past month," being in a down mood most of the time, frequent mood swings, feelings of worthlessness, and irritable mood. (Tr. 509). Her last panic attack was six months ago, but she continued to avoid public spaces and does not like to leave home. *Id*.

On March 17, 2015, Plaintiff reported that she noticed no change in her anxiety symptoms, and reported a panic attack the day before because she had to see a new family doctor. (Tr. 499). The symptom review noted that Plaintiff had mild depressive symptoms, mood swings, and irritability, but moderate anxiety with weekly panic attacks as well as moderate racing thoughts. *Id*. She was prescribed Xanax and Abilify, continued on Buspar, and Klonopin was discontinued as ineffective. (Tr. 502).

On April 14, 2015, Plaintiff reported that medication helped alleviate her symptoms and she suffered only one panic attack the previous month. (Tr. 494). Nevertheless, she continued to feel anxious throughout the day and did not want to leave her house. *Id*. On mental status examination, she had depressed/anxious mood and constricted affect, logical thought process, impaired attention/concentration, average insight, and fair judgment. (Tr. 496). Her Xanax was

increased and Abilify was discontinued due to side effects. (Tr. 497).

On August 31, 2016, Plaintiff was seen by Vidya Pandit, M.D., who noted Plaintiff did not want to be seen by a nurse practitioner and insisted on a psychiatrist. (Tr. 629-630). Plaintiff reported her symptoms had not changed since her last visit three months earlier; those symptoms include depressed mood, crying spells, fatigue, poor concentration, irritability, loss of interest, weight gain, poor sleep, sense of failure, headaches, and anxiety. (Tr. 629). Dr. Pandit assessed depression and altered her medications, psoriatic arthritis for which she restarted Plaintiff on 800 mg of Ibuprofen three times daily, and morbid obesity for which she recommended a healthy diet and exercise. (Tr. 630).

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On July 25, 2015, Doug Waltman, Ph.D., completed a Mental Status Questionnaire. (Tr. 460-462). He indicated Plaintiff was first seen on February 24, 2015 and last seen on July 8, 2015. (Tr. 460). Dr. Waltman indicated that Plaintiff had a depressed and irritable mood, with constricted affect, as well as mild depression with mood swings, moderate anxiety and racing thoughts. *Id*. Dr. Waltman noted that Plaintiff was impaired in attention and concentration, had fair judgment, and average insight. *Id*. Plaintiff had a positive response to medications but not fully effective. (Tr. 461). He further indicated that Plaintiff was capable of remembering, understanding, and following instructions; her ability to maintain attention and sustain concentration were impaired; her ability to engage in social interaction was impaired due to anxiety; and her ability to cope with stress was greatly impaired by her anxiety. *Id*.

On July 30, 2015, state agency physician Edmond Gardner, M.D., completed a physical RFC assessment finding that Plaintiff could frequently lift/carry ten pounds, stand for two hours, and sit for six hours in an eight-hour workday. (Tr. 113, Exh. B3A). Further, Plaintiff could

never climb ladders/ropes/scaffolds or crawl, but could perform other postural activities occasionally. (Tr. 114). Dr. Gardner opined Plaintiff was limited to frequent handling and fingering bilaterally. *Id*. Plaintiff also had to avoid concentrated exposure to extreme heat and all exposure to hazards. (Tr. 115).

On August 25, 2015, state agency psychologist Karla Voyten, Ph.D., determined that Plaintiff had mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of an extended duration. (Tr. 111, Exh. B3A). She completed a mental RFC assessment finding that Plaintiff had no understanding and memory limitations but did have sustained concentration and persistence limitations. (Tr. 116). She assessed moderate limitations in the following categories: ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or in proximity to others without being distracted by them; and, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. She explained that Plaintiff retained "the capacity to perform work which is not fast paced and does not require strict production quotas." *Id*.

In the area of social interaction, Dr. Voyten assessed moderate limitations in the following categories: the ability to accept instructions and respond appropriately to criticism from supervisors; and, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 116-117). She explained that Plaintiff retained "the capacity to perform work which requires superficial interaction with supervisors, coworkers, and the

8

general public." (Tr. 117). Finally, in the area of adaptation, Dr. Voyten assessed the moderate

limitations in the following categories: the ability to respond appropriately to changes in the

work setting; and, the ability to set realistic goals or make plans independently of others. *Id*. She

explained that Plaintiff retained "the capacity to perform work which requires infrequent changes

in a static work environment." *Id*.

On October 23, 2015, state agency physician Diane Manos, M.D., reviewed the evidence of

record and adopted Dr. Gardner's RFC assessment. (Tr. 144-146, Exh. B7A).

On October 27, 2015, Carl Tischler, Ph.D., reviewed the evidence of record and largely

adopted Dr. Voyten's RFC assessment. (Tr. 146-148, Exh. B7A).

### B. Relevant Hearing Testimony

At the March 6, 2017 hearing, Plaintiff testified as follows:

- Her cane was prescribed to her by a neurologist. (Tr. 44). She uses her cane every day. (Tr. 51-52).

- She is 5'7" tall and weighs 280 pounds. (Tr. 45).

- She has a drivers' license, but only drives about once a month. (Tr. 46).

- She dropped out of high school around 1996, but obtained a GED in 2003. (Tr. 47).

- She has not worked since 2013. She last worked at a nursing home between 2009 and 2012. In 2006, she worked at a fast food restaurant. (Tr. 47).

- She cannot work because she is "scatterbrained," she has a "hard time … working and dealing with stuff," and her hands hurt when manipulating things. (Tr. 47-48). She has difficulty writing due to shaky hands. (Tr. 48).

- She is depressed because she feels worthless, which also causes her stress and anxiety. She never wants to leave the house due to the stress of being around others. (Tr. 48).

- She usually has pain all day and every day in her lower back. (Tr. 48-49). She rated her back pain as a six or seven on a ten-point scale without medication. (Tr. 49). Her pain would drop to a four with medication such a Motrin, but she does not really "take much for pain"

and expressed an aversion to pain killers. (Tr. 49).

• Her hands felt "okay" the day of the hearing. (Tr. 48). Later she stated her hands hurt every day and that the pain is constant. She stated her hand pain is "the worst," and that she has such a hard time using her hands that she "can't think straight." (Tr. 50).

• She has racing thoughts and cannot concentrate on one, single task. Stress aggravates her conditions. (Tr. 51).

• She has tried smoking marijuana to ease her pain, because she does not want to take pain killers. (Tr. 51).

• She can sit for 45 minutes to an hour comfortably before she needs to get up to stretch her back out. (Tr. 52).

• She can stand for about an hour using her cane. (Tr. 52-53). She guessed she could stand for maybe 30 minutes without her cane, indicating she has not tried to do so. (Tr. 53).

• She could walk about one block with her cane. (Tr. 53).

• She can lift 5 to 10 pounds. (Tr. 53). Her problems balancing prevent her from lifting more. (Tr. 54).

• She has problems remembering taking her medication or soaking her dentures. (Tr. 54).

• She spends her days watching television. She no longer reads due to difficulty concentrating. (Tr. 55).

• Her boyfriend performs most of the household chores, she performs only about 5 to 10 percent of the chores. (Tr. 56).

• She has been prescribed medications for her impairments, which do not cause any side effects. (Tr. 57).

• She manages her anxiety and depression with medication. (Tr. 57-58).

• She has psoriatic arthritis, and at one point had a lot of skin lesions that have gone away for the most part due to her Otezla medication. (Tr. 58).

• Her other arthritis symptoms include pain and tenderness in the hands and wrists. (Tr. 59). She also experiences shaking in both hands. (Tr. 60). Her hand pain was exacerbated by repetitive movements and attempts to manipulate things with her hands and fingers. (Tr. 60). She has difficulty holding onto things due to a weak grip. (Tr. 61).

10

- She is off-balance when walking. (Tr. 61).

- She tries to avoid wearing clothes with buttons or zippers. (Tr. 62).

- Her most comfortable position is lying down, but she spends most of her day in a recliner. She gets up every 20 minutes to stretch. (Tr. 64).

The ALJ posed the following hypothetical question to the VE:

> I'm going to ask you to assume the following past positions, and these come from the prior administrative law decision. That of an STNA, DOT code 355.674-014, with an SVP an actual SVP of 4. The DOT exertional level medium. The actual exertional level of heavy. Fast food worker, DOT code 311.472-010, with an SVP of 2, an actual SVP of 2. The DOT exertional level of a light. The actual exertional level of light as well. Further, I'd like you to assume a hypothetical individual of the Claimant's age and education and with those past two positions that I've described. Further assume that the hypothetical individual is limited as follows. To sedentary, except the hypothetical individual could occasionally climb ramps and stairs, but never climb ladders ropes and scaffolds. The hypothetical individual could occasionally balance, stoop, kneel, and crouch, but never crawl. The hypothetical individual has the ability to frequently handle and/or finger with her bilateral upper extremities. The hypothetical individual must avoid concentrated exposure to extremes of heat and must avoid all exposures to hazards defined as industrial machinery, unprotected heights. The mental limitations limited to performing simple, routine, and repetitive tasks, but not at a production rate pace, i.e. assembly line work. Limited to simple work-related decisions in using her judgement and dealing with changes in the work setting. Able to frequently interact with supervisors, coworkers, and the public. First, could that hypothetical individual perform any of the past positions as I've described either as actually performed or generally performed in the national economy?

(Tr. 67-68).

The VE testified that such an individual could not perform any of Plaintiff's past relevant work. (Tr. 68). However, such an individual could perform the following sedentary jobs, which would all have an SVP of 2: document specialist, DOT 249.587-018 (120,000 jobs nationally); charge account clerk, DOT 205.367-014 (100,000 jobs nationally); and, food and beverage order clerk, DOT 209.567-014 (140,000 jobs nationally). (Tr, 68-69).

The ALJ posed a second hypothetical asking the VE to "assume the same limitations that I described in hypothetical number one, but now adding that the hypothetical individual requires a cane to ambulate." (Tr. 69). The VE testified that such an individual could perform the same three jobs identified above. *Id.*

The ALJ posed a third hypothetical asking the VE to "assume the same limitations I described in hypothetical number two, … but now modifying the bilateral handling and fingering to occasional." (Tr. 69). The VE testified that such an individual could not perform the same three jobs identified above or any other sedentary jobs. (Tr. 70).

The VE testified in response to a fourth hypothetical that being off task 20 percent of an eight-hour work shift, or being absent from work two days per month would be work preclusive. (Tr. 70).

The VE testified that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. 72).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First,

the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since September 10, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: multiple sclerosis, psoriatic arthritis, mild discogenic degenerative changes of the lower thoracic and upper lumbar spines, obesity, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work with the following limitations (see generally 20 CFR 404.1567(a) and 416.967(a)). She can occasionally climb ramps and stairs but she can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, and crouch, but never crawl. She can frequently handle and finger with the bilateral upper extremities. She must avoid concentrated exposure to extremes of heat and hazards (such as industrial machinery and unprotected heights). She is further limited to simple, routine, and repetitive tasks, but not at a production rate pace (i.e., assembly line work). She is further limited to simple work-related decisions when using her judgment and dealing with changes in the work setting. She is limited to frequent interaction with supervisors, coworkers, and the public. She has [sic] requires a cane to ambulate.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on ***, 1981 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-29).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

Plaintiff argues that the RFC failed to accurately portray her mental and physical limitations and, therefore, the RFC was not supported by substantial evidence. (R. 11, PageID# 750-759).

The RFC is an indication of an individual's work related abilities *despite* their limitations.

15

*See* 20 C.F.R. §§ 404.1545(a).[4] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). On the physical side, the ALJ found Plaintiff could perform a reduced range of sedentary work with the added limitations of only occasionally climbing ramps/stairs, balancing, stooping, kneeling, and crouching, but never crawling or climbing of ladders/ropes/scaffolds. (Tr. 24). In addition, Plaintiff could only frequently handle and finger with the upper extremities.[5] *Id.* These limitations mirror those assessed by State Agency physicians Dr. Gardner and Dr. Manos. (Tr. 113-115, Exh. B3A; Tr. 144-146, Exh. B7A). The ALJ expressly adopted these opinions. (Tr. 26). On the mental side, the ALJ limited Plaintiff to simple, routine, and repetitive tasks, but not at a production rate pace (i.e., assembly line work); simple work-related decisions when using her judgment and dealing with changes in the work setting; and, frequent interaction with supervisors, coworkers, and the public.[6] (Tr. 25). These limitations largely echo those assessed by State Agency psychologists Dr. Voyten and Tischler. (Tr. 111-117, Exh. B3A; Tr. 146-148, Exh. B7A). Again, the ALJ expressly adopted these opinions. (Tr. 26).

State Agency opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the

---

[4] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).
[5] The ALJ also included the requirement for a cane for ambulation. (Tr. 25).
[6] Pursuant to Social Security Ruling ("SSR") 83-10 "'Frequent' means occurring from one-third to two-thirds of the time." 1983 WL 31251 at *6 (S.S.A. 1983).

opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.") Thus, the RFC determination was supported by substantial evidence of record.

However, Plaintiff's argument, despite ostensibly challenging whether the RFC was supported by substantial evidence, also appears to challenge whether the ALJ sufficiently assessed Plaintiff's credibility pursuant to SSR 16-3p. (R. 11, PageID# 751-759). Plaintiff asserts that the ALJ did not adequately discuss her physical symptoms of pain and fatigue or her mental limitations caused by anxiety, agoraphobia, and stress. *Id*. Moreover, Plaintiff avers the ALJ failed to address the factors set forth in SSR 16-3p. *Id*.

As the ALJ's decision is dated May 15, 2017, SSR 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) applies to this action, as it superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996) with respect to "determinations and

decisions on or after March 28, 2016."[7]  According to SSR 16-3p (as well as SSR 96-7p),

evaluating an individual's alleged symptoms entails a two-step process that involves first

deciding whether a claimant has an "underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. at *2-3.

The ALJ's decision found the first step was satisfied and states that Plaintiff's medically

determinable impairments "could reasonably be expected to cause the alleged symptoms." (Tr.

25). After step one is satisfied, when considering the intensity, persistence, and limiting effects

of an individual's symptoms, an ALJ should consider the following seven factors: (1) daily

activities (Tr. 22, 26); (2) the location, duration, frequency, and intensity of pain or other

symptoms (Tr. 20-22); (3) factors that precipitate and aggravate the symptoms; (4) the type,

dosage, effectiveness, and side effects of any medication an individual takes or has taken to

alleviate pain or other symptoms (Tr. 25-26); (5) treatment, other than medication, an individual

receives or has received for relief of pain or other symptoms (Tr. 24); (6) any measures other

than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any

other factors concerning an individual's functional limitations and restrictions due to pain or

---

[7] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the more recent ruling, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96-7p has been invalidated by SSR 16-3p.

other symptoms. (Tr. 22) SSR 16-3p at *4-8 (same factors as in SSR 96-7p). The ALJ concluded that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 25).

An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"). "In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p at *10.[8] Rather, an ALJ's "decision must contain specific reasons for the weight

---

[8]  SSR 16-3p merely replaced the term "credible" in this sentence from SSR 96-7p with the terms "supported or consistent." 2016 WL 1119029 at *9.

given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

Though the decision would have been more clear if it contained a unified analysis of the credibility of Plaintiff's symptoms, the court reads the decision as a whole. At a minimum, the decision considered several of the seven factors. With respect to her physical symptoms and limitations, the ALJ expressly noted that: "[t]he claimant has not required any targeted steroid injections or surgical intervention for her degenerative spine disease throughout the current adjudicating period" (Tr. 20); "[h]er pain symptoms have been treated conservatively with various targeted medications, such as Otezla, Neurontin, and, until November 2015, narcotic pain relievers for breakthrough symptoms" (Tr. 20); treating neurologist Dr. Bambakidis noted several times that Plaintiff was doing "relatively well" with treatment with respect to her multiple sclerosis (Tr. 20); that treating neurologist Dr. Ali believed Plaintiff had responded amelioratively to medications (Tr. 23-24); and, that Dr. Ali had advised Plaintiff to exercise up to five times per week and lose weight. (Tr. 24). With respect to her mental symptoms and limitations, the ALJ expressly made the following observations: Plaintiff underwent "five months of formal mental health treatment with Dr. Ahn" after which her mental health was managed by her treating physicians (Tr. 21); the medical records failed to "establish any increased social anxiety or outbursts to suggest worsening anxiety symptoms," (Tr. 22); Dr. Ahn

characterized Plaintiff's anxiety as "moderate" (Tr. 22); and, Dr. Pandit's treatment notes showed Plaintiff "responded amelioratively to psychotropic treatment and remained generally stable without the need for additional treatment during the current adjudicating period." (Tr. 26).

Though greater detail may be preferable, an ALJ is not required to analyze all seven factors, but only the relevant evidence. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"); *Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id*. at *8. Furthermore, Plaintiff fails to offer any meaningful argument as to how greater discussion of her alleged symptoms would have necessarily resulted in the conclusion that her self-reported limitations were more credible than found by the ALJ.[9]

Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court cannot find the ALJ's credibility analysis was insufficient. Thus, Plaintiff's

---

[9] Plaintiff cites no authority for the proposition that an ALJ must discuss each and every alleged limitation separately.

assignment of error is without merit.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: June 13, 2019

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**